UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CYNTHIA M. HINSKE,** | ) | CASE NO. 1:13 CV 2844 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| **CUYAHOGA COUNTY,** | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

*Pro se* Plaintiff Cynthia M. Hinske filed this action under Title VII, 42 U.S.C. § 2000e, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.A. § 623, against her former employer, Cuyahoga County ("the County"). In the Complaint, Plaintiff asserts she was terminated from her job after her employer discovered she had worked at another job while she was absent from work from the County on paid sick leave. She claims she was fired on the basis of her race, gender or age. She asks that she "be made whole again." (ECF No. 1 at 1).

Plaintiff also filed an Application to Proceed *In Forma Pauperis*. (ECF No. 2). That Application is granted.

## I. BACKGROUND

Plaintiff's Complaint is very short and contains no information pertaining to her case.

Instead, she attaches 229 pages of exhibits which she contends contain all of the facts pertinent to her claims.

From these exhibits, the Court was able to determine that Plaintiff was employed by Cuyahoga County as a Child Support Enforcement Agency Support Officer from October 1998 to August 30, 2012.  She has also worked evenings and weekends at Sears as a Customer Service Supervisor from October 1999 to the present.  Plaintiff had surgery to correct a hernia on January 25, 2012 and was discharged from the hospital on January 31, 2012.  She was absent from work from CSEA on paid sick leave from January 25, 2012 through February 10, 2012.  Because she was considered a part time employee at Sears, she did not have paid sick leave from that employer.  Instead, she used her vacation time to cover her absence.

Plaintiff, however, ended her vacation leave with Sears two days earlier than she ended her sick leave from the county.  While she was still on sick leave from CSEA, she worked at Sears on February 9, 2012 from 11:56 am to 5:02 pm, during the hours she would have been working for CSEA, and on February 10, 2012 from 4:58 pm to 10:20 pm on February 10, 2012.  CSEA learned about the time she worked at Sears while she was still on sick leave, and filed a disciplinary report with the County's Inspector General charging her with abuse of sick leave.

The progressive discipline handbook of Cuyahoga County, revised on April 5, 2011, states in pertinent part:

> Falsification of employment records or other county records in manual or automated systems, including falsification of stated reason for use of leave (e.g., abuse of sick leave or using sick leave for unauthorized purposes) is considered to be an infraction of dishonesty and is grounds for immediate employment termination.

(ECF No. 1-4 at 6).  The Inspector General's Office conducted an investigation into the charge.  It appears from the documents that Cuyahoga County was previously unaware of Plaintiff's second job at Sears.  Employees were required to complete a secondary employment disclosure form, but Plaintiff did not complete this form until after the disciplinary charges were brought against her.  She indicates she believed that requirement only applied to jobs which could pose a potential conflict of interest and she did not think her job with Sears posed that problem.  The Inspector General reminded all County employees on May 30, 2012 of the requirement to disclose secondary employment, and gave them until July 2, 2012 to correct the deficiency or face discipline.  Plaintiff completed the disclosure of secondary employment form on June 4, 2012 and was not charged with failing to report her secondary employment.  Nevertheless, the discovery of her work for an undisclosed secondary employer while on sick leave with the County did not create a favorable inference of an inadvertent time keeping error.  On June 29, 2012, the Inspector General determined there was sufficient evidence to support the charge of abuse of sick leave, and recommended that the matter be referred to the County Executive and the Human Resources Department for review and consideration of appropriate disciplinary actions, up to and including termination.

A pre-disciplinary conference was held on July 16, 2012.  Plaintiff presented a statement in her defense admitting she made a mistake but claiming she did not intend to violate the County's sick leave policy.  She explained that she was not feeling well on February 9 and 10, 2012 but was asked by the Sears scheduler to work those two shifts.  As a supervisor, she believed she was expected to fill in gaps in the schedule when no other employees were available to work.  She conceded she should have contacted CSEA and asked them to change

her sick leave to personal leave but she did not think of it at the time. She alleges she had not intended to abuse the County's sick leave policy and offered to reimburse the County for the sick pay she had received for those two days. She received written notice from the County Executive on August 28, 2012 that her employment with CSEA was being terminated effective August 30, 2012 in accordance with its progressive discipline policy.

Plaintiff claims she was treated less favorably than other employees who made "inadvertent errors on time keeping." (ECF No. 1-2 at 2). As examples of employees treated more favorably than her, she lists Amile Jaroce and Christal Brown, and attaches employment records of other County employees who were disciplined. Amile Jaroce, a Middle Eastern man under the age of 40, told Plaintiff he called in sick to work in 2006 and was seen on the evening news picking up a job application for the Cleveland Police Department that same day. He indicated to Plaintiff that he was required to change his sick leave to vacation leave but was not fired. Christal Brown, an African-American woman under the age of 50, was arrested and charged with a misdemeanor on May 26, 2011. She was disciplined by the County for failing to report her arrest and was suspended from her job. While abusing sick leave was not an issue in her case, a union representative speculated to Plaintiff that perhaps Brown's supervisor had changed her sick leave to vacation leave when she learned of the reason for Brown's absence. Plaintiff also included numerous disciplinary records listing multiple county employee who altered their time records, abused sick leave policies and committed other infractions. All of the employees listed were terminated from their employment or voluntarily resigned.

## II. LAW AND ANALYSIS

**Standard of Review**

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when the Defendant is immune from suit or when the Plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

**Failure to State a Claim**

Plaintiff's actual Complaint does not contain a single factual allegation. The entire pleading consists of exhibits and attachments from which she expected the Court to construct a viable pleading. Neither the Court nor the Defendant are obligated to search through the Complaint and its voluminous exhibits in order to glean a clear and succinct statement of each claim for relief. It is Plaintiff's responsibility to edit and organize her claims and supporting allegations into a manageable format. *Laster v. Pramstaller*, No. 08–CV–10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008). Nevertheless, the Court did search through all 229 pages of exhibits and was unable to find any factual support for a claim under Title VII or the ADEA.

The Court is aware that, at this stage, Plaintiff is not required to plead her discrimination claims with heightened specificity. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 513-14 (2002). Nevertheless, after *Swierkiewicz*, the Supreme Court clarified that a Plaintiff must still provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal,* 550 U.S. at 678. She cannot rely solely on legal conclusions to state a claim. *Iqbal,* 550 U.S. at 678. Rather, she must provide enough facts to allow the Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id*. at 556. This standard requires the Plaintiff to demonstrate more than a sheer possibility that the Defendant acted unlawfully. *Id*. Where a Complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

Plaintiff's Complaint never rises above the speculative level. Title VII makes it unlawful

for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). Similarly, the ADEA prohibits an employer from making an adverse employment decision based solely on the fact that the employee is over 40 years old. The documents upon which she relies to establish the basis of her claims do not create even an inference that race, gender or age were factors in her termination from employment.

Her Equal Employment Opportunity Commission ("EEOC") Complaint does not support her claim. When prompted by the form to state why she believed her employer's actions were discriminatory, she wrote, "treated differently than my co-workers where they were permitted to correct inadvertent errors in time keeping I made an honest mistake and wanted to make it right employer considered conduct too dishonest." (ECF No. 1-2 at 2). When asked for names of people treated better than her in the same or similar situation, she lists two employees. Later, she indicates one of them was disciplined in 2006, five years before the progressive discipline policy went into effect in 2011 making sick leave abuse a removable violation. The other individual was an African-American female under the age of 50 who was disciplined for failing to report her arrest on misdemeanor charges to the County. While abusing sick leave was not an issue in her case, a union representative speculated to Plaintiff that the employee in question may not have been charged with abusing sick leave if her supervisor changed her sick leave to vacation leave when she learned of the reason for Brown's absence. There is no suggestion in the documents supplied by Plaintiff that this speculation was true, or that the County was aware of the action and permitted it to take place. Ms. Brown is also a female, under the age of 50,

which would not support a claim for gender or age discrimination. In addition to these individuals, Plaintiff provides records from the Inspector General listing multiple employees of different genders, ages and races who were fired from their employment or resigned for abusing leave or altering time cards. If any conclusion can be drawn from these documents, it is that the County was consistent in applying its progressive discipline policy.

Moreover, none of the other documents she attached as exhibits create a reasonable inference that Plaintiff's race, gender or age was a factor in her termination. She admits she worked her second job during hours for which she was receiving paid sick leave from the County. She acknowledges that the County's progressive discipline policy, adopted in 2011, specifically identifies this action as an infraction for which an individual may be terminated from employment. She provides lists of numerous other County employees of various ages, genders and races who committed similar infractions and who were also fired or voluntarily resigned. She states she was fired because her employer considered her conduct to be too dishonest. Firing an employee for dishonesty, alone, does not violate either Title VII or the ADEA. Without a factual allegation suggesting the possibility of discrimination, Plaintiff's Complaint fails to state a federal claim for relief.

### III. CONCLUSION

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* (ECF No. 2) is granted and this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good

faith.[1]

    IT IS SO ORDERED.

                                                      s/ Christopher A. Boyko  
                                                      CHRISTOPHER A. BOYKO  
                                                      UNITED STATES DISTRICT JUDGE

DATED: May 23, 2014

---

[1] 28 U.S.C. § 1915(a)(3) provides:

    An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.